IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

|  |  |  |
|---|---|---|
| JAMES D. NICHOLS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-CV-146 (DLB) |
| | ) | |
| PROGRESSIVE DIRECT | ) | Judge Bunning |
| INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND FOR APPROVAL OF ATTORNEYS' FEES AND <u>SETTLEMENT CLASS REPRESENTATIVE INCENTIVE AWARD</u>

# TABLE OF CONTENTS

I.   Introduction ................................................................................2

II.  The Litigation ..............................................................................2
     A.   The Settlement Class.................................................................4
     B.   The Benefits of the Settlement ....................................................4
     C.   Class Notice and Settlement Administration .............................6
     D.   Opt Outs and Objections .............................................................7

III. Argument .....................................................................................7
     A.   The Class Should Be Certified for Settlement Purposes...........7
          1.   The Proposed Class is Sufficiently Definite ...................7
          2.   The Action Meets All Requirements of Rule 23(a).......8
               a. Numerosity ................................................................8
               b. Commonality.............................................................9
               c. Typicality ................................................................9
               d. Adequacy of Representation ..................................10
          3.   The Action Meets All Requirements of Rule 23(b)(3) ............12
               a. Predominance of Common Questions....................13
               b. Superiority...............................................................14
                    i. Interests of Individual Members ........................14
                    ii. Pending Proceedings..........................................15
                    iii. Concentration of Litigation in One Forum. ......15
                    iv. Manageability ..................................................15
     B.   The Settlement is Fair, Reasonable and Adequate ..................16
          1.   Plaintiff's Likelihood of Success at Trial vs. The Amount of
               Settlement ..................................................................17
          2.   Length, Complexity and Cost of Further Litigation ...................19
          3.   Stage of Proceeding at Which Settlement Was Achieved. ..........19
          4.   The Nature of the Negotiations...................................20
          5.   Substance and Amount of Opposition to the Settlement ............20
          6.   The Judgment of Experienced Trial Counsel..............20
          7.   The Public Interest .....................................................21
          8.   Other Issues................................................................21
     C    Plaintiff's Request for Attorney's Fees is Fair and Reasonable.................22
          1.   The Value of the Benefit Rendered to the Plaintiff Class...........25
          2.   Society's Interest in Rewarding the Attorneys .........26
          3.   Services Rendered Were on a Contingent Fee Basis ..................26
          4.   The Value of the Services on an Hourly Basis ..........26
          5.   Complexity of the Litigation......................................27
          6.   The Professional Skill and Standing of Counsel.........27
          7.   The Totality of the Circumstances..............................27
     D.   The Court Should Approve An Incentive Award to the Settlement
          Class Representative ......................................................28

IV.  Conclusion ................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................. passim

*Armstrong v. Board of School Directors,* 616 F.2d 305 (7th Cir. 1980) .........................21

*Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38 (6th Cir. 1990) ...................................16

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F. Supp. 697
(S.D. Ohio 1986) ...............................................................................................................24, 27

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ..........................18

*Berry v. School Dist.,* 184 F.R.D. 93 (W.D. Mich. 1998) ..................................................17

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th Cir. 1997) ......................................10

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) .....................................................................24

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) ...................................................24, 26

*Bowling v. Pfizer, Inc.,* 922 F. Supp. 1261 (S.D. Ohio 1996) .......................................25, 26

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) .........................24, 25, 27

*Central Wesleyan College v. W.R. Grace & Co.,* 143 F.R.D. 628 (D.S.C. 1992) .............15

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); ...........................................................21

*Craft v. Vanderbilt Univ.*, 174 F.R.D. 396 (M.D. Tenn. 1996) .........................................10

*Day v. NLO, Inc.,* 144 F.R.D. 330 (S.D. Ohio 1992) .........................................................9

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) ...............10

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240
(S.D. Ohio 1991) ...............................................................................................................28

*Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410 (6th Cir. 1998) ...................................9

*Fisher Bros. v. Phelps Dodge Industries, Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ...........21

*Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993) ............................................10

*Fry v. UAL Corp.*, 136 F.R.D. 626 (N.D. Ill. 1991) .........................................................14

*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) ............................................................13

*Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987)........................................................25

*Impervious Paint Industries Ltd. v. Ashland Oil, Inc.,* 1980 U.S. Dist. LEXIS 9895
(W.D. Ky. Jan. 4, 1980) ......................................................................................................14

*Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129 (E.D. Ky. 1981)..............................9

*In re American Medical Sys.*, 75 F.3d 1069 (6th Cir. 1996)................................................9

*In re Cardinal Health Inc. Sec. Litig.,* 2007 U.S. Dist. LEXIS 95127
(S.D. Ohio Dec. 31, 2007) ............................................................................................24, 25

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659
(D. Minn. 1974) ..................................................................................................................21

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) .....................11

*In re Dun & Bradstreet Credit Services Customer Litig.,* 130 F.R.D. 366
(S.D. Ohio 1990)......................................................................................................19, 20, 28

*In re GMC Pick-up Truck Fuel Tanks Prods. Liab. Litig.,* 55 F.3d 768 (3rd Cir. 1995)...17

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) ....................................28

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3rd  Cir. 1998) ....14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997) .....
...............................................................................................................................10, 14

*In re Potash Antitrust Litig.,* 159 F.R.D. 682 (D. Minn. 1995) .........................................13

*In re School Asbestos Litig.*, 789 F.2d 996 (3rd Cir. 1986) ...............................................13

*In re Sulzer Orthopedics, Inc.*, 398 F. 3d 778 (6th Cir. 2005)...........................................24

*In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 1029 (S.D. Ohio 2001) ............25, 26

*In re Telectronics Pacing Sys., Inc.,* 186 F.R.D. 459 (S.D. Ohio 1999)............................24

*Karvaly v. eBay, Inc.*, 245 F.R.D. 71 (E.D.N.Y. 2007) ......................................................6

*Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997) ...................................18

*Manners v. American General Life Ins. Co.,*, 1999 U.S. Dist. LEXIS 22880
(M.D. Tenn. Aug. 10, 1999) ........................................................................................17, 18

*New Eng. Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,*
234 F.R.D. 627 (W.D. Ky. 2006)............................................................................. passim

*Noonan v. Ind. Gaming Co., L.P.*, 217 F.R.D. 392 (E.D. Ky. 2003)....................................9

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ........................ passim

*Rawlings v. Prudential-Bache Props.*, 9 F.3d 513 (6th Cir. 1993).............................23, 24

*Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623 (D. Colo. 2002)....................................................6

*Senter v. GMC*, 532 F.2d 511 (6th Cir. 1976)...........................................................8, 10, 11

*Smillie v. Park Chem. Co.,* 710 F.2d 271 (6th Cir. 1983)...................................................23

*Sprague v. GMC,* 133 F.3d 388 (6th Cir. 1998) ...................................................................9

*Sweet v. General Tire & Rubber Co.*, 1982 U.S. Dist. LEXIS 12371
(N.D. Ohio Mar. 17, 1982) ................................................................................................21

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2d Cir.1982)........................18

*Tucker v. Union Underwear Co.*, 144 F.R.D. 325 (W.D. Ky. 1992)..................................10

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) ................17, 18, 21

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ....................................................17, 21

Other

7A C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, §1760 (2nd ed. 1986) 8

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.222 (2004) ...........................................8

## I. INTRODUCTION

Plaintiff Jamie Brown submits this memorandum in support of her motion for final approval of the Settlement Agreement reached in this litigation, certification of the Settlement Class, approval of attorneys' fees, and an approval of an incentive award to the Settlement Class Representative.[1] As will be detailed below, the Settlement Agreement (as amended by the First Amendment to Settlement Agreement) is fair, reasonable and adequate and satisfies all of the criteria for final settlement approval and class certification under applicable law. Plaintiff, by her attorneys, therefore respectfully moves the Court to finally approve the Settlement Agreement, certify the Settlement Class, and approve Plaintiff's request for attorneys' fees and an incentive award.

## II. THE LITIGATION

Plaintiff Jamie Brown was, at all relevant times hereto, a policyholder of Defendant Safe Auto Insurance Company ("Safe Auto"), having paid premiums and attendant charges for the insurance of her personal automobile.

Defendant Safe Auto is an insurer which writes consumer and commercial automobile insurance in the Commonwealth of Kentucky. By virtue of that business presence, Safe Auto is subject to Kentucky local government insurance premium taxes enabled by KRS § 91A.080. By law, insurers like Safe Auto are allowed to collect such taxes from the policyholder insuring the risk, but must determine where the risk is located in order to accurately calculate, collect and remit the taxes that are actually due to the respective local taxing jurisdictions.

Brown, along with a number of other named Plaintiffs, filed the instant action as a proposed class action, alleging that Defendant Safe Auto and other insurance companies with

---

[1] Unless otherwise specified, capitalized terms are defined in the Settlement Agreement, as amended.

which they had contractual relationships, had incorrectly calculated, collected, and allocated local government insurance premium taxes by collecting the taxes from policyholders when none were due, or at rates higher than permitted or required by prevailing local ordinances. Plaintiff Brown alleges, on behalf of herself and a similarly situated class of Persons in the Commonwealth of Kentucky, that she has suffered economic and non-economic loss as a result of the errors or omissions alleged with respect to Defendant Safe Auto. Defendant Safe Auto has denied, and continues to deny, Plaintiff's allegations.

The Litigation has been protracted. Defendant Safe Auto and others removed Plaintiff Brown's claims to this Court. The Court denied Plaintiff's Motion to Remand and denied the Defendants' Motions to Dismiss following extensive and comprehensive briefing by the parties. The parties thereafter initiated discovery into class certification issues.

As the discovery process began, counsel for Defendant Safe Auto and counsel for Plaintiff conducted formal and informal discovery. Among other information, Defendant Safe Auto provided a comprehensive analysis that identified specific instances, from June 22, 2001 to October 18, 2007, where premium taxes were collected from policyholders that were either not owed, or were at rates higher than permitted.

Plaintiff's counsel were given an opportunity to inspect the analysis and were satisfied following examination, that the analysis accurately and as completely as practicable identified the instances where an over-collection of taxes occurred.

The parties thereafter began a series of protracted, arms-length negotiations, which took place over a period of several months and included in-person mediation, multiple telephone conferences, and exchange of drafts and re-drafts of settlement documents. Following these negotiations, Plaintiffs entered into a Settlement Agreement with Safe Auto that settles and

resolves all of Plaintiff's and Settlement Class Members' claims against Safe Auto in this

Litigation. The Court preliminarily approved the Settlement Agreement on October 5, 2007.

Order Granting Motion for Preliminary Approval of Class Action Settlement, October 5, 2007

(Doc. 131) ("Prel. App. Order"). Plaintiff now moves for final approval.

As will be detailed below, the Settlement Agreement is fair, reasonable and adequate and

satisfies all of the criteria for final settlement approval and final class certification under federal

law. Plaintiff, by her attorneys, respectfully move this Court to finally approve the Settlement

Agreement, finally certify a Settlement Class for settlement purposes, appoint Settlement Class

Counsel and a Settlement Class Representative, award reasonable attorneys' fees and costs and

award an Incentive Award.

### A.    Settlement Class

The Settlement Class is defined as follows:

> All persons, including individuals and corporations, in the
> Commonwealth of Kentucky, who purchased insurance from Safe
> Auto and who, during the Relevant Time Period, were charged
> local government taxes on their payments of insurance premiums
> that were either not owed or at rates higher than permitted by the
> local government or municipality wherein they reside.

Excluded from the Settlement Class are: (1) Safe Auto and any entity in which Safe Auto

has a controlling interest or which has a controlling interest in Safe Auto, and the legal

representatives, assigns and successors of Safe Auto; (2) the Judge to whom this case is assigned

and any member of the Judge's immediate family; and (3) all Persons who, in accordance with

the terms of this Agreement, properly request exclusion from the Settlement Class.

### B.    The Benefits of the Settlement Agreement

Pursuant to the Settlement Agreement, Defendant Safe Auto agreed to create, and in fact

has since created a discrete Settlement Fund in the amount of Two Million Five Hundred and

Twelve Thousand ($2,512,000.00) Dollars. This amount constitutes 100% of the taxes that were paid by Class Members in excess of the amounts required plus simple interest on those amounts at the rate of eight percent (8%) per annum. This Settlement Fund was deposited by Safe Auto with the Settlement Administrator Rust Consulting on or about October 15, 2007.

Notice of the Settlement was sent by First-Class mail to 43,447 Class Members. Affidavit of Kimberly K. Ness ("Ness Aff."), ¶ 7. The Notice included a Claim Form by which Class Members could confirm, subject to the penalty of perjury, that they were policyholders of Safe Auto during the Relevant Time Period (June 22, 2001-October 18, 2007). *Id.*, Exh. A. Upon return of the Claim Form, the Settlement Administrator utilized information provided by Defendant Safe Auto and reviewed by Settlement Class Counsel to calculate the Class Members' cash payment, which includes taxes paid in excess of what was owed, together with simple interest at the rate of 8% per annum. The Claims Administrator has preliminarily determined that the amount of refund to Class Members who timely filed a claim will be $229,715.67. *Id.*, ¶ 15.

In addition, Class Members who were *current* policyholders of Safe Auto as of October 5, 2007, will receive a refund of the amount paid in excess of applicable tax rates, if any, during the 24 month period preceding the date the Court grants Preliminary Approval of the Settlement regardless of whether a Claim Form is submitted. The benefit provided to Class Members who are current policyholders, but who do not submit a claim form, may be issued in the form of a credit against premiums due on recurring or renewal bills. Credits to accounts of current policyholders will not reduce the Settlement Fund.[3] The Claims Administrator has preliminarily determined that the amount of refund to these Class Members will be $338,704.31. *Id.*, ¶ 15.

---

[3] Safe Auto holds a reverter interest in the Settlement Fund following full administration of the Settlement.

Beyond the cash payments and refunds described above, Defendant Safe Auto has agreed to implement and maintain sufficient resources in the form of data, software, and personnel, to insure the accurate calculation, collection, and allocation of insurance premium taxes levied pursuant to the authority of Kentucky law for future transactions. The losses prevented by virtue of this affirmative relief are difficult to measure, but presumably will exceed the amount of the Settlement Fund over the next six years and beyond.

### C.     Class Notice and Settlement Administration

The costs associated with Class Notice and Settlement Administration have been and will be deducted from the Settlement Fund, pursuant to the terms of the Settlement Agreement.  The cost of the publication notice was $6,723 and the Settlement Administrator has agreed to accept a fixed amount of $80,000 for all services performed in connection with the Litigation.

Notice was sent by first class mail to 43,447 current and former policyholders at their last know address between October 18, 2007 and December 15, 2007.[4]  Ness Aff., ¶ 7.  Pursuant to CAFA, on October 8, 2007, notice was also sent to the United States Attorney General and the Insurance Commissioner for the Commonwealth of Kentucky. *Id.,* ¶ 5.

Summary notice was also published in the *Louisville Courier-Journal,* the *Lexington Herald-Leader* and the *Kentucky Enquirer/Cincinnati Post.*  Ness Aff.,¶ 8. Complete information about the settlement was made available on a settlement website, and by calling a toll free number.  *Id.*, ¶¶ 9, 12.

Through January 6, 2008, the Claims Administrator received 2,180 Claim Forms. *Id.*, ¶ 12.  The Claims Administrator was unable to deliver 9,633 Class Notices due to incorrect addresses.

---

[4] First class mailing is generally considered to be the best notice practicable as it "provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members."  *Reab v. Elec. Arts, Inc.,* 214 F.R.D. 623, 630 (D. Colo. 2002).  Notification by electronic mail, by contrast, creates a risk of distortion or misleading notification that are substantially reduced when first class mail is used.  *Id.; see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y.  2007).

The Court should find that the notice program constituted the best practicable notice of the Fairness Hearing, is valid, due and sufficient notice of to all members of the Settlement Class, and complied fully with requirements of Rule 23 of the Federal Rules of Court Procedure and the Constitution of the United States.

### D.    Opt Outs and Objections

No Settlement Class Member objected to the Settlement Agreement.  Ness Aff., ¶ 14. There were no Requests for Exclusion submitted by Settlement Class Members.  *Id.*

## III.    ARGUMENT

### A.    The Class Should Be Certified For Settlement Purposes.

The Court has preliminary approved the Settlement Class. *See* Prel. App. Order.  Final certification is now warranted as the benefits of a settlement can only be realized though the final certification of a settlement class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  The proposed class satisfies each of the requirements of Rule 23(a) and (b)(3)

In *Amchem*, the Supreme Court expressly acknowledged that cases may be certified for settlement purposes only.  In doing so, the Supreme Court stated that the "dominant concern" on which a court should focus in deciding to certify a class is "whether a proposed class has sufficient unity so that the absent members can fairly be bound by decisions of class representatives."  *Id*. at 621.  The Court further held that, when certification is raised in connection with a class action settlement, "settlement is relevant to a class certification," *id.* at 619, and must be considered as a "factor in the calculus."  *Id.* at 622.

### 1.    The Proposed Class Is Sufficiently Definite

Rule 23(b)(3) certification requires "a class definition that will permit identification of individual class members" so that best notice practical may be given to them.  MANUAL FOR

COMPLEX LITIGATION (Fourth) § 21.222 (2004). Plaintiff's proposed class definition readily meets that standard.

With the assistance of GeoTAX, a software application designed by Pitney Bowes/Group 1 Software to allocate and calculate local government premiums with accuracy, Safe Auto analyzed its customer data base and identified all persons, including individuals and corporations, in the Commonwealth of Kentucky, who purchased insurance from Safe Auto and who, from June 22, 2001, through October 5, 2007, were charged local government taxes on their payments of insurance premiums that were either not owed or at rates higher than permitted by the local government or municipality wherein they reside. Affidavit of Michael Overmyer ("Overmyer Aff."), ¶¶6-13.

As the Mr. Overmyer's affidavit amply shows, *Id.*, ¶ 11, it is "administratively feasible" to determine whether a particular individual is a member of the class. 7A C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, §1760, 121 (2nd ed. 1986). Certification of the class as defined is therefore proper.

### 2. The Action Meets All Requirements of Rule 23(a).

The four requirements of Rule 23(a) are numerosity, commonality, typicality and adequacy. *Senter v. GMC*, 532 F.2d 511, 522 (6th Cir. 1976). As demonstrated below, these four requirements are satisfied in this action.

#### a. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." This requirement is not amenable to a strict numerical test. *In re American Medical Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). To satisfy the numerosity requirement, a plaintiff need not specify an exact number of class members, but must show only that joinder is

impracticable. *Noonan v. Ind. Gaming Co., L.P.*, 217 F.R.D. 392, 395 (E.D. Ky. 2003); *Ingram v. Joe Conrad Chevrolet, Inc*., 90 F.R.D. 129, 130 (E.D. Ky. 1981).

In the instant case, class notice was sent to over <u>43,000</u> present and former insureds of Safe Auto. There is no question that the class is so numerous that joinder of all members would be impracticable. Thus, the numerosity requirement is satisfied.

b.      *Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." A single issue common to all members of the class satisfies the requirement. *American Med Sys*, 75 F.3d at 1080. To satisfy Rule 23(a)(2), the case must present a common issue the resolution of which will advance the litigation. *Sprague v. GMC,* 133 F.3d 388, 397 (6th Cir. 1998). This requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant, and the general policy is the focus of the litigation." *Day v. NLO, Inc.,* 144 F.R.D. 330, 333 (S.D. Ohio 1992) (emphasis in original); *see also Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 424 (6th Cir. 1998) (commonality test is met "when there is at least one issue whose resolution will affect all or a significant number of the putative class members").

In this case, the Second Amended Complaint (¶ 35(vii)) (June 22, 2006) alleges six factual and legal issues common to the Class, including whether Safe Auto's billing practices were in violation of the Kentucky Insurance Code and the Kentucky Consumer Protection Act. The commonality requirement is thus satisfied.

c.      *Typicality*

Typicality is satisfied when the named plaintiff's injuries "arise[ ] from the same event or practice or course of conduct that give rise to the claims of other class members and his or her

claims are based on the same legal theory." *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn. 1996); *accord Senter*, 532 F.2d at 525 n. 31 (citation omitted). Slight factual differences that may exist between the class representative and the other Class members will not defeat typicality. *See also Tucker v. Union Underwear Co.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992) ("absolute homogeneity" not required). As is the case with the test for commonality, the test for typicality "is not demanding." *Bittinger v. Tecumseh Prods. Co*., 123 F.3d 877, 884 (6th Cir. 1997) (*quoting Forbush v. J.C. Penney Co*., 994 F.2d 1101, 1106 (5th Cir. 1993)).

The typicality requirement is satisfied in this case because the representative plaintiff alleges claims that arise from the same course of conduct that harmed all Class Members and are based on the same legal theories. *See In re Prudential Ins. Co. of Am. Sales Practices Litig*., 962 F. Supp. 450, 518 (D.N.J. 1997) (typicality requirement met in case alleging replacement vanishing premium and investment plan claims, because defendant's alleged scheme to defraud was "prominent guiding thread through all of the plaintiffs' claims"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (typicality requirement where "named plaintiffs were subjected to the same deceptive sales techniques allegedly used by [defendant] against other class members"). Specifically, Plaintiff and the Class contend that the errors and omissions giving rise to the overcharges resulted from a common scheme or practice, and that the manner in which such errors manifested in harm to the Plaintiffs were the substantively the same for each class member. The typicality requirement is therefore satisfied.

d.    *Adequacy of Representation*

Rule 23(a)'s adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625 (citations omitted). This requirement is met when (i) the named representatives have common

10

interests with unnamed members of the class and (ii) the representatives have retained qualified counsel. *Senter*, 532 F.2d at 525.

There are no conflicts of interest between plaintiffs and other Class Members that would impair the representative plaintiff's incentive to prosecute vigorously all aspects of the claims against Safe Auto. The representative plaintiff has the same incentive as other Class Members who believe they were subject to the wrongful imposition of taxes by Safe Auto, *i.e.*, to establish the violation of law and to maximize the overall recovery. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("so long as all class members are united in asserting a common right, such as achieving the maximum recovery for the class, the class interests are not antagonistic for representation purposes") (internal citation omitted). In addition, it is clear that the settlement – which is relevant to determining whether there is adequate representation of absent class members, *Amchem*, 521 U.S at 621 – benefits the Class and does not involve any sacrifice of the interests of some Class Members for those of others.[5]

Finally, the absence of any requests for exclusion and absence of any objection from Class Members confirms that the interests of the named plaintiffs and of Class Members are closely aligned and that the vast majority of Class members believe that their interests have been well served.

The Plaintiff has engaged competent counsel. The firms representing the Class in this case are clearly qualified to conduct this action. Gary E. Mason of The Mason Law Firm, L.L.P. has successfully prosecuted dozens of consumer class actions is state and federal courts

---

[5] All Class Members are eligible to obtain the same level of benefits from the Settlement, i.e. 100% recovery. The procedures for distribution of the Settlement Fund are designed to facilitate the distribution of funds to Class Members as best as possible under the circumstances. While payments will be sent directly to current customer member, but not prior customers, this distribution reasonably anticipates the high number of "bad" addresses for former customers. Ness Aff., ¶ 13 (22% of Notices undeliverable). As discussed below, the plan of distribution is fair and reasonable and does not "sacrifice" any Class Members interests for the benefit of others. *See, infra*, at 22-23.

throughout the country since 1990.  Declaration of Gary E. Mason ("Mason Decl.), ¶ 1.  Alex
Edmondson, Jason Reed, Chris Nordloh are all experienced litigators and well-respected in the
Covington legal community.  John C. Whitfield is an experienced litigator and trial lawyer with a
well-deserved reputation for zealously representing plaintiffs both individually and as part of
class actions in Western Kentucky.  These attorneys have vigorously conducted this litigation
from the outset.  Only after plaintiffs' counsel had satisfied themselves that they had procured
the best possible settlement for the Class, under the circumstances and considering the
uniqueness of the Defendant, was an agreement reached.  The Class thus had more than adequate
representation.

### 3. <u>The Action Meets All Requirements of Rule 23(b)(3).</u>

In addition to satisfying the four prerequisites of Rule 23(a), Plaintiff must establish that
the requirements of one of the three subdivisions of Rule 23(b) are met.  Here, Plaintiff seeks
certification pursuant to Rule 23(b)(3)**.**

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the
class predominate over any questions affecting only individual members, and that a class action
is superior to other available methods for the fair and efficient adjudication of the controversy."
Fed. R. Civ. P. 23(b)(3).  This provision encompasses those cases in which a class action would
achieve economies of time, effort, and expense and promote uniformity of decision as to persons
similarly situated, without sacrificing procedural fairness or bringing about other undesirable
results.  *See* Fed.R.Civ.P. 23, Advisory Committee Note to 1966 Amendments, *reprinted in* 39
F.R.D. 69, 102-3 (1966) (hereinafter "Federal Rule 23 Committee Note").  Both criteria are met
in this case: common questions predominate and a class action is the superior method to
adjudicate the claims of the class.

### a. *Predominance of Common Questions*

The predominance requirement in Rule 23(b)(3) focuses "on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. This requirement "requires a predominance of common questions, not a unanimity of them." *Hanrahan v. Britt*, 174 F.R.D. 356, 365 (E.D. Pa. 1997). The predominance requirement is satisfied when the litigation will concern "significant legal and factual questions which are common to the class." *Id.*; *see also In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3rd Cir. 1986) (even a few common questions may satisfy the predominance requirement if resolution of those issues "will so advance the litigation that they may fairly be said to predominate). A claim will meet the predominance requirement where there exists generalized evidence that proves or disproves an element on a simultaneous, classwide basis, because such proof obviates the need to re-examine each class member's individual position. *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 693 (D. Minn. 1995).

As noted above, the Second Amended Complaint alleges that Safe Auto failed to charge its insureds the proper tax on premiums as a result of one or more uniform, institutional practices. These allegations of a common scheme are sufficient to demonstrate that common questions predominate. *See Amchem,* 521 U.S. at 625 ("predominance is a test readily met in certain cases alleging consumer . . . fraud"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 314 (3rd Cir. 1998) (finding predominance where plaintiffs alleged that defendant engaged in a common course of conduct by which it defrauded class members); *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991) (in deciding whether the "predominance" requirement is met, courts generally focus on the issues relating to defendants' liability) (citation omitted). Common issues of law and fact thus predominate.

b.     *Superiority*

This case also meets the second requirement of Rule 23(b)(3):  that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Impervious Paint Industries Ltd. v. Ashland Oil, Inc.,* 1980 U.S. Dist. LEXIS 9895, at *23 (W.D. Ky. Jan. 4, 1980) (Ex. 1, hereto).  Four factors control the court's determination of superiority: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, (iv) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

i.     *Interests of Individual Members*

The interest of class members in conducting separate lawsuits does not require denial of class certification when a large number of class members' claims would be so small that class members would be deterred from bringing actions on their own.  *In re Prudential Ins. Co. of Am. Sales Practices Litig*., 962 F. Supp. at 523. Indeed, as the Supreme Court reasoned in *Amchem:*

> the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for individuals to bring a sole action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617.  Class Members who wished to pursue their own lawsuit could have requested exclusion, thus no Class member was precluded from conducting a separate lawsuit if he or she so desired.  None chose to do so.  Moreover, the interest of Class Members in pursing their individual claims is actually advanced by the Settlement Class because the settlement itself

14

provides an efficient and cost-free means for Class Members to present individual claims and obtain individual relief.

ii.       *Pending Proceedings*

The second factor, the nature and extent of any existing litigation, also weighs in favor of class action superiority.  The focus of the inquiry is on whether there is so much litigation in progress that certifying a class would be unproductive.  *Central Wesleyan College v. W.R. Grace & Co.,* 143 F.R.D. 628, 640 (D.S.C. 1992), *aff'd,* 6 F.3d 177 (4th Cir. 1993).  Plaintiff is unaware of any individual lawsuits against Safe Auto involving the issues at bar, and Safe Auto has revealed none.

iii.       *Concentration of Litigation in One Forum*

Because this case will be settled (not tried), the desirability of concentrating the litigation in a particular forum is consistent with certification.  It is clearly more efficient to have these claims resolved in one forum.

iv.       *Manageability*

Given the Supreme Court's holding that a court certifying a settlement class need not decide whether or not a class action would be manageable at trial, *Amchem,* 521 U.S. at 620*,* the Court need not consider the issue of manageability.  Nevertheless, the proposed Settlement resolves any manageability problems by creating a mechanism for reviewing the individual claims of Class Members and thereby permits a sizable number of Class Members to achieve individual relief without burdening the judicial system.

This system of notice and claims is founded upon the analysis performed by Safe Auto using the GeoTAX geo-mapping and tax-jurisdiction assignment software.  Overmyer Aff., ¶ 10 -12.  That analysis compared the tax jurisdiction assignments originally made by Safe Auto for

each insured risk, with the more accurate tax jurisdiction assignments generated by GeoTAX, in order to determine who had been over-taxed as a result of the assignment error. *Id.*, ¶ 11. Using that analysis, Safe Auto and the Plaintiff were able to accurately identify each Settlement Class member and calculate individual damages, without having to expend unreasonable effort, time, or resources. *Id.*

This analysis, together with the Notice program, made the management of this action extremely reasonable.

For all of the foregoing reasons, the Class should be certified for settlement purposes.

**B.      The Settlement is Fair, Reasonable and Adequate.**

Under Rule 23 (e) of the Federal Rules of Civil Procedure, a court should approve a proposed class action settlement if it determines that the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). In making this determination, the court should consider the following six factors: (1) plaintiff's likelihood of success on the merits, weighed against the amount and form of relief offered in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the nature of the class and (5) the judgment of experienced counsel. *See, e.g., Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *New Eng. Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006); *Whitford v. First Nationwide Bank* , 147 F.R.D. 135, 140 (W.D. Ky. 1992); *Manners v. American General Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22880, at *90 (M.D. Tenn. Aug. 10, 1999) (Ex. 2, hereto).

In addition, a court should consider the "overriding public interest in favor of settlement of class action lawsuits," *Whitford*, 147 F.R.D. at 143, bearing in mind that compromise is the

essence of settlement, *see Williams*, 720 F.2d at 922 ("[a] court may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case"). The proposed settlement here more than satisfies these various considerations.

## 1. Plaintiff's Likelihood of Success at Trial vs. Amount of Settlement

The Court must determine whether the Settlement Agreement is within a range which experienced attorneys could accept in light of the relevant risks of the litigation. *In re GMC Pick-up Truck Fuel Tanks Prods. Liab. Litig.,* 55 F.3d 768, 806 (3rd Cir. 1995). "One of the most important factors in assessing the fairness of a settlement agreement is the strength of the plaintiffs' case on the merits balanced against the relief offered in the settlement." *Berry v. School Dist.,* 184 F.R.D. 93, 98 (W.D. Mich. 1998).

The outcome of litigation is never a certainty. Although the Plaintiff was confident in her claims, having overcome a strenuously contested motion to dismiss, Plaintiff also faced the risk that the Court would ultimately not grant class certification or, if a class was certified, that the Plaintiff would be unable to prove that Safe Auto committed any of the wrongful actions alleged negligently or willfully or otherwise fail to obtain class-wide relief.

This likelihood of success must be measured against the results achieved in settlement. "A court must balance the amount offered in settlement against the strength of the class action suit." *Whitford*, 147 F.R.D. at 143. In making this determination, the Court should make only a "'limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" *Manners,* 1999 U.S. Dist. LEXIS 22880, at * 55.

There is no fixed point above or below which a settlement is or is not fair. Indeed, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" *Manners*, 1999 U.S. Dist. LEXIS 22880, at *57 (quoting *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 463-64 (2d Cir.1982)).

Here, as in any litigation, Plaintiff had no guarantee of success was she to pursue her claims to trial.   Nonetheless, the settlement offers Class Members <u>100%</u> of their overpayments <u>plus 8% pre-judgment interest</u>.[6]   Given that the compensation available to Class Members through the settlement equates to the <u>maximum</u> recovery of compensatory damages they might have obtained at trial, the settlement is eminently reasonable.  This conclusion is true especially when viewed in light of settlements approved by other courts where class members recovered only a percentage of their damages in a settlement context. *See, e.g., Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319 (W.D. Pa. 1997) (court approved settlement amounting to 5.35 percent of damages); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise"), *aff'd,* 899 F.2d 21 (11th Cir. 1990).

In addition, Safe Auto has agreed to implement and maintain sufficient resources in the form of data, software, and personnel, to insure the accurate calculation, collection, and allocation of insurance premium taxes levied pursuant to the authority of Kentucky law for future

_____

[6] The amount of the fund was determined by Safe Auto with the assistance of GeoTAX, which was  specifically designed to perform this type of analysis. See Overmyer Aff., ¶ 11. Although the Settlement contemplates a *pro rata* reduction of the payment amount if the amount claimed exceeds in the amount available for payments from the Settlement Fund, no reduction will actually be required.  See Ness Aff., ¶ 15.

transactions. The losses prevented by virtue of this affirmative relief are difficult to measure, but given the track record of the industry in accurately calculating, collecting, and allocating local government premium taxes, are likely equal to the value of the Settlement Fund.

## 2. Length, Complexity and Cost of Further Litigation

This case involves the taxation of premiums paid on approximately 54,000 insurance policies over a six year period. If this case were to proceed without settlement, the resulting litigation would lengthy, complex and expensive. Indeed, non-settling Defendants have continued to file substantive and procedural challenges to the Plaintiffs' claims, demonstrating conclusively that continued litigation would be lengthy, complex, and costly. The proposed Settlement, on the other hand, grants Class Members timely relief without their having to endure the risk.

## 3. Stage of Proceeding at Which Settlement Was Achieved

Although the Settlement was reached without substantial formal discovery, the case was sufficiently advanced to allow Plaintiff's Counsel to assess the legal and factual merits of plaintiff's claims and to negotiate a settlement tailored to Class Member's needs. Indeed, Safe Auto voluntarily provided an internal analysis prepared utilizing information formally requested by Plaintiffs of other Defendants – and which was ultimately the subject of Plaintiffs' contested Motion to Compel.

Plaintiff's counsel thoroughly reviewed that analysis, and had worked extensively to familiarize themselves with GeoTAX. The litigation process and the discovery process, though informal, have thus afforded the Court and the parties a clear view of "the facts and legal issues involved, as well as the strengths and weaknesses of [the parties] positions." *In re Dun & Bradstreet Credit Services Customer Litig.,* 130 F.R.D. 366, 372 (S.D. Ohio 1990).

### 4. <u>The Nature of the Negotiations</u>

The settlement was the product of two in-person meetings between plaintiff's counsel and counsel for Safe Auto, numerous telephone conferences, and extensive negotiations over the details of the Settlement Agreement and related documents. Mason Decl., ¶ 5. The Settlement was not finalized until after plaintiffs had had time to review, evaluate and ask Safe Auto questions about the damages database created with the aid of Group 1's GeoTAX software. The Parties did not enter into negotiations over attorneys' fees and costs until after the agreement had been reached on the benefits to the Class. *Id.* The history of the settlement negotiations thus clearly counsels in favor of approving the Settlement. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms' length negotiations between experienced counsel after meaningful discovery." *New England Health Care*, 234 F.R.D. at 632 (citations omitted); *see also In re Dun & Bradstreet,* 130 F.R.D. at 372 (approving settlement negotiated at arm's length, with no evidence of collusion and no indication that any party or subgroup of class members benefited at class's expense).

### 5. <u>Substance and Amount of Opposition to the Settlement</u>

There has not been any opposition to this Settlement. No Class Members have been excluded from the class. Ness Aff., ¶ 14. No objections have been submitted. *Id.* This lack of opposition strongly supports approving the Settlement.

### 6. <u>The Judgment of Experienced Trial Counsel</u>

The fairness of the settlement process and of the Settlement Agreements themselves also was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. "The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . (however, the deference afforded

counsel should correspond to the amount of discovery completed and the character of the evidence uncovered.)" *Williams*, 720 F.2d at 922-923; *see also, Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Fisher Bros. v. Phelps Dodge Industries, Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight").

The Settlement Agreement was specifically negotiated by experienced counsel, respected members of their legal communities with extensive experience in consumer class action lawsuits and, in particular, consumer-based, complex litigation, similar in size, scope and complexity to the present case – meets all the requirements of Rule 23 and specifically provides administrative procedures to ensure all Class Members equal and sufficient due process rights.

### 7. The Public Interest

There is an overriding public interest in favor of settlement of class action lawsuits. *Whitford*, 147 F.R.D. at 143 (citing *Armstrong v. Board of School Directors,* 616 F.2d 305, 313 (7th Cir. 1980)). Where, as here, the Settlement Agreement provides Class Members certainty of outcome, expeditious recovery and the fullest recovery of compensatory damages possible under the law, there is a significant public interest in finding the Settlement Agreement to be fair, reasonable and adequate.

### 8. Other Issues

The Court has expressed concern that the Settlement grants preferential treatment to one segment of the Settlement Class. *See Sweet v. General Tire & Rubber Co*., 1982 U.S. Dist. LEXIS 12371, at *22 (N.D. Ohio Mar. 17, 1982) ("A settlement that arbitrarily disadvantages a

discrete subgroup of the class in comparison to the remaining class members may be inequitable") (Ex. 3, hereto).  Specifically, although the Settlement Agreement requires all Class Members to submit a Claim Form to obtain a full refund of overpayments for the entire Relevant Time Period, Class Members who are customers of Safe Auto as of October 5, 2007, will receive an <u>automatic</u> refund of overpayments made during the prior 24 month period.

Far from an arbitrary distinction, this dichotomy was based on several well-reasoned grounds.  First, Safe Auto is seeking reimbursement of the overpayments from the Kentucky municipalities which, by agreement among Safe Auto, the Kentucky Office of Insurance, and the Kentucky League of Cities, is limited to a 24-month period.  As Safe Auto, in light of this Settlement, does not want to maintain any of the money collected, it was sensible to structure the benefit program to provide automatic payments to current Class Members entitled to this pass-through and whose accounts could be easily credited.  *See* Transcript of Motions Hearing ("Tr.") (Oct. 4, 2007) at 23:16-24:12.  Second, Safe Auto was unwilling to make automatic payments to persons who were not current customers due to the high probability that the check would be sent to an incorrect address.  *Id.*  Safe Auto's concern was borne out by the notice program – 22% of the mailing was returned as undeliverable.  Ness Aff., ¶ 13.  The disparate treatment of segments of the class fairly and reasonably reflects the circumstances of the case.  There should therefore not be any concern that a segment of the Settlement Class is improperly receiving preferential treatment.[7]

**C.**     **Plaintiff's Request for Attorneys' Fees is Fair and Reasonable.**

The Settlement provides an immediate recovery of $2,512,000 (the "Settlement Fund") for the benefit of Class Members.  Settlement Agreement, ¶ 3.1.  Counsel request an award of

---

[7]  *See also* Declaration of William B. Rubenstein ("Rubenstein Dec."), ¶¶ 1, 25-36, dated January 15, 2008.

attorneys fee and expenses in the amount of $595,000.[8] Safe Auto has agreed to pay this amount, if approved by the Court. *Id.*, ¶ 11.1. The fee and expense negotiations were conducted at arm's-length and only after the parties had reached agreement on all terms of the Settlement. Mason Decl., ¶ 5. There were no objections filed to the request for attorneys' fees and costs. Ness Aff., ¶ 14.

Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved. *Smillie v. Park Chem. Co.,* 710 F.2d 271, 275 (6th Cir. 1983); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974). This action was undertaken and prosecuted on a wholly contingent basis. The Court must ensure that class counsel are fairly compensated for the amount of work done and the results achieved. *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993). The core inquiry is whether an award is reasonable under the circumstances. *Id.* at 517. Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation.

It is within the court's discretion to determine "the [appropriate] method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings.,* 9 F.3d at 516. Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either a percentage of the fund calculation, or a lodestar/multiplier approach. *In re Cardinal Health Inc. Sec. Litig.,* 2007 U.S. Dist. LEXIS 95127, at *26 (S.D. Ohio Dec. 31, 2007) (Ex. 4, hereto); *New England*

---

[8] Plaintiff's Counsel do not seek a separate award of costs. Counsel notes that they have incurred costs of approximately $9,779.40. *See* Certification of Christopher S. Nordloh ("Nordloh Cert."), ¶ 6; Certification of Edmonson & Associates ("Edmondson Cert."), ¶ 8; Mason Decl., ¶ 7.

*Health Care,* 234 F.R.D. at 633 (citing *Rawlings,* 9 F.3d at 516). The district court's award of attorneys' fees in common fund cases need only be "reasonable under the circumstances."

Where counsel's efforts create a substantial common fund for the benefit of the Class, they are entitled to a payment from the fund based on a percentage of the fund. *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 909 (S.D. Ohio 2001); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 640 F. Supp. 697, 699 (S.D. Ohio 1986) (*citing Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980). This "allows a Court to prevent . . . inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing,* 444 U.S. at 478.

The Sixth Circuit's "preferred approach" to calculating attorneys' fees to be awarded in a common benefit case is a percentage of the class benefit. *Cardinal Health¸* 2007 U.S. Dist. LEXIS 95127, at *31 (following "prevailing trend" and using percentage approach to determine attorneys' fees); *In re Sulzer Orthopedics, Inc.,* 398 F. 3d 778, 780 (6th Cir. 2005); *In re Telectronics Pacing Sys., Inc.,* 186 F.R.D. 459, 483 (S.D. Ohio 1999), *rev'd on other grounds,* 221 F.3d 870 (6th Cir. 2000); *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 779-80 (6th Cir. 1996); *Rawlings,* 9 F.3d at 516 ("percentage of fund method more accurately reflects results obtained").

The percentage of the fund approach accomplishes three objectives. First, it is consistent with the private marketplace where contingent fee attorneys are routinely compensated on a percentage of the recovery method. Second, it provides a strong incentive to plaintiffs' counsel to obtain the maximum recovery in the shortest possible time under the circumstances. Third, the percentage approach reduces the burden on the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members. *See*

*generally Cardinal Health*, 2007 U.S. Dist. LEXIS 95127 at *30-31 (percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class).

Plaintiff's requested award for fees and expenses amounts to 23.6% of the Settlement Fund, exclusive of accrued interest. The 23.6% share is comparable to, and indeed, below the percentage of recovery approved in similar cases. *New England Health Care,* 234 F.R.D. at 634 (25%); *Brotherton*, 141 F. Supp. at 910 (fee awards in common fund cases typically range "from 20 to 50 percent of the common fund"); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (40%); *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("the range of reasonableness . . . has been designated as between twenty to fifty percent of the common fund"). As the Court previously noted, 23% is a "very fair amount." Tr., 26:3-6.

The Sixth Circuit has identified several factors for consideration in the determining the reasonableness of a fee award: (1) the value of the benefit rendered to the plaintiff class; (2) society's stake in rewarding counsel who produce such benefits in order to maintain an incentive to others; (3) whether Class Counsel's services were performed on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides, *Ramey,* 508 F.2d at 1196.

A review of these factors supports the Plaintiff's fee request as being fair and reasonable.[9]

### 1. The Value of the Benefit Rendered to the Plaintiff Class.

The first *Ramey* factor requires the Court to evaluate the benefit of the settlement to the Class. District courts in this Circuit widely regard the first *Ramey* factor as the most important. *See Bowling*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996) ("Most important among these factors are the value of the benefit rendered to the plaintiff class). In this case, in terms of percentage

---

[9] *See also* Rubenstein Dec., ¶¶ 1, 17-24.

loss recovered, class counsel could not have done better.  The Class has recovered <u>100%</u> of its loss plus 8% interest. Because of the outstanding recovery, this factor weighs heavily in favor of awarding the requested fee.

### 2. Society's Interest in Rewarding the Attorneys.

"Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling . . . claimants to pool their claims and resources" to achieve a result they could not obtain alone." *In re Telectronics*, 137 F. Supp. at 1043.  There is a public interest in ensuring that attorneys willing to represent consumers in litigation arising from the wrongful imposition of fees and improper charges are adequately paid so that they and others like them will continue to take on such cases.  This factor also weighs in favor of the requested fee award.

### 3. Services Rendered Were on a Contingent Fee Basis.

The third *Ramey* factor stands as a proxy for the risk the attorneys will not recover compensation for the work they put into a case.  *Bowling,* 922 F. Supp. at 1282.  Class Counsel took this case on a contingent fee basis.  If Plaintiffs' Counsel failed to win a judgment or reach a settlement, they would have received nothing and also forfeited their expenses.  If this had not been a class action, the contingency fee would have been greater than 24%.  As this case was without any precedent in Kentucky (or elsewhere) the risk of non-recovery against Safe Auto was high.  This factor weighs in favor the requested fee award.

### 4. The Value of the Services on an Hourly Basis.

Under the fourth *Ramey* factor, the Court may examine the value of the attorneys' services on an hourly basis by performing the lodestar cross-check to confirm the reasonableness of the fund award.  *See also Bowling*, 102 F.3d 777 (6th Cir. 1996).  Counsel have collectively expended approximately 500 hours in its prosecution of this litigation against Safe Auto.  *See*

Nordloh Cert., ¶ 3 (108 hours); Edmondson Cert., ¶ 6 (205 hours); Mason Decl., ¶ 6 (165.95 hours); Whitfield Dec., ¶ 5 (20 hours).  Based upon their current rates, Plaintiff's Counsel's combined lodestar in connection with the prosecution and settlement of claims against Safe Auto is approximately $166,507. [10]  Nordloh Cert., ¶ 3 ($20,000); Edmondson Cert., ¶ 6 ($56,512.50); Mason Decl., ¶ 5 ($84,084.50); Whitfield Dec., ¶ 5 ($5,900).  Based upon the $595,000 fee requested, less the $10,000, the lodestar multiplier is 3.5.  Multipliers of between approximately 2.0 and 5.0 are generally considered reasonable in this Circuit.  *Basile,* 640 F. Supp. at 700; *Brotherton,* 141 F. Supp. 2d at 913.  The multiplier here falls precisely at the mid-point of this range.  Consequently, the lodestar cross-check confirms the reasonableness of the requested fee.

**5.      Complexity of the Litigation.**

This litigation is complex, involving multiple defendants, unique issues of Kentucky law, and complex class action procedures.  This factor weighs in favor of the requested fee.

**6.      The Professional Skill and Standing of Counsel.**

As set forth above, Plaintiffs are represented in the case by experienced attorneys well-regarded in the local community and the Commonwealth of Kentucky as well as by lawyers with extensive national experience litigating consumer class actions.  The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of the action.  This factor also supports the requested fee award.

**7.      The Totality of the Circumstances.**

Class Counsel's requested fee of approximately 24% of the common fund they created is fair and reasonable.  The percentage requested falls slightly below the norm and the analysis of

---

[10] Plaintiff's Counsel submit the Affidavit of Paul J. Vesper, Esq. and the Affidavit of Daniel A. Small, Esq.  These attorneys' declarations establish the reasonableness of the rates used by Plaintiff's counsel and that these rates are consistent with their training, background, experience and skill.

the *Ramey* factors shows that, if anything, a somewhat higher percentage would still fall well within the range of reasonableness. The Court should therefore award Plaintiffs' Counsel the amount of $595,000 as negotiated by the parties.

**D.    The Court Should Approve An Incentive Award to the Settlement Class Representative.**

The service provided by the individuals who served as class representatives should not go without financial recognition. While service as a representative plaintiff is not a profit-making position, the law recognizes that it is appropriate to make modest awards in recognition of the services that such plaintiffs perform in successful class litigation. *See*, *e.g.*, *In re Lease Oil Antitrust Litig*., 186 F.R.D. 403, 449 (S.D. Tex. 1999) (incentive awards ranged from $750 to $10,000); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240, 251 (S.D. Ohio 1991) (awarding incentive awards of $50,000 per class representative); *In re Dun & Bradstreet,* 130 F.R.D. at 373-74 (incentive awards ranged from $35,000 to $55,000).

The Settlement Agreement recognizes this principle by providing an award to the Class Representative, the efforts of whom were used as the vehicle to effectuate a resolution of all Class Members 'claims against Safe Auto. The Class Representative was the principal catalyst to achieving this result for the Settlement Class. Consistent with the law and the terms of the Settlement Agreement, it is appropriate to make a modest "Incentive Award" in the amount of $1,500.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that this Court certify the Settlement Class, finally approve the Settlement Agreement, and approve attorneys' fees and the incentive award to the Settlement Class Representative.

Dated: January 15, 2008

Respectfully submitted,

/s/ Alexander F. Edmondson_____
Alexander F. Edmondson
Jason V. Reed
EDMONDSON & ASSOCIATES
28 West Fifth Street
Covington, KY 41011
P: (859) 491-5551

Christopher S. Nordloh
NORDLOH LAW OFFICE, P.C.
28 West Fifth Street
Covington, KY 41011
P: (859) 491-9991

John C. Whitfield
WHITFIELD & COX, P.S.C.
29 East Center Street
Madisonville, KY 42431
P: (270) 821-0656

Gary E. Mason
THE MASON LAW FIRM, L.L.P
1225 19th St., NW, Ste. 500
Washington, DC 20016
P: (202) 429-2290

Alexander E. Barnett
THE MASON LAW FIRM, L.L.P
1120 Avenue of the Americas, Ste. 4019
New York, NY 10036
P: (212) 362-5770
ATTORNEYS FOR PLAINTIFF
JAMIE BROWN

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2008, I electronically filed the foregoing with the Clerk of the U.S. District Court via the CM/ECF system, thereby generating electronic service to all counsel of record in the and consolidated matters.

/s/ Jason V. Reed
Jason V. Reed