## AFFIDAVIT OF MICHAEL OVERMYER

STATE OF OHIO         :
                      :
COUNTY OF FRANKLIN    :

BEING FIRST DULY SWORN, I, Michael Overmyer, do hereby state that:

1. I am an officer of Safe Auto Insurance Company (hereinafter, the "Company") located at 3883 East Broad Street, Columbus, Ohio 43213, serving in the capacity of Vice President, Controller;

2. I have extensive knowledge of the policies, practices and procedures of the Company's Accounting Department;

3. As part of my duties at the Company and as a result of the lawsuit known as *Nichols v. Progressive et. al*, Boone District Court, Division II, Case No. 06-C-1172, I was assigned the task of helping management evaluate the Company's allocation, collection and remittance of local government premium taxes on business written in the Commonwealth of Kentucky during the time period relevant to the lawsuit and identifying policyholders from whom the Company collected taxes in error;

4. As part of this project, I was also assigned the task of helping management correct the local government premium taxes it remitted in years past to numerous taxing authorities in the Commonwealth;

5. Due to my involvement in this matter, I have personal knowledge of: (1) the procedures the Company used in years past for the allocation, collection and remittance of taxes, (2) the changes management made to the Company's systems to

avoid errors into the future, and (3) how the parties compiled the data which was used to identify class members and calculate their benefits under the proposed settlement;

6. On March 7, 2006, the Company purchased a software application from Group 1 Software, a subsidiary of Pitney Bowes Corporation, called GeoTAX. GeoTAX is a software application that assigns street addresses to their local political jurisdictions using a geo-coded database. It was developed by Group 1 Software specifically to help insurers and retailers calculate and allocate local government taxes more accurately.

7. On May 31, 2006, following a special examination by the Kentucky Office of Insurance (the "KOI") of the Company's local government premium tax practices and procedures, the Company entered into an Agreed Order with the KOI whereby the Company was required to implement a Corrective Action Plan to bring its allocation, collection and remittance of local government premium taxes into compliance with KRS 91A.080 and 806 KAR 2:905;

8. On June 22, 2006, management, in accordance with the Agreed Order, submitted a Corrective Action Plan to the KOI. The Company was also served with notice of the present lawsuit on or about June 22, 2006. Under the Corrective Action Plan the Company agreed to integrate GeoTAX into its billing management systems. The KOI approved the Company's Corrective Action Plan on August 1, 2006;

9. Following months of development and testing, the Company started using GeoTAX at the beginning of the 4th Quarter of 2006 to help it calculate taxes on policies going forward;

10. Management then compiled a historical database of previous billing and taxing transactions during the class period and used GeoTAX to assist it in identifying

previous errors due to policyholder addresses having been coded to the wrong taxing authority. This activity occurred in late 2006 and early 2007 after the Corrective Action Plan was fully implemented and GeoTAX was integrated into the Company's live billing system;

    11.    Management used the following methodology to identify previous errors:

        a.  The data fields gathered for analysis were:

            i.  Policy number

           ii.  Policyholder

          iii.  Premium paid

          iv.  County taxing authority paid

            v.  County tax rate

          vi.  County tax paid

          vii.  City taxing authority paid

         viii.  City tax rate

          ix.  City tax paid

        b.  This data was then fed through GeoTAX to identify where mistakes were made because addresses were coded to the wrong political jurisdiction. Based upon this process, the following data fields were captured:

            i.  GeoTAX-based county taxing authority

           ii.  GeoTAX-based county tax rate

          iii.  GeoTAX-based county tax computed

          iv.  GeoTAX-based city taxing authority

    v. GeoTAX-based tax rate

    vi. GeoTAX-based tax computed

    vii. Difference between original county tax paid and GeoTAX-based county tax computation

    viii. Difference between original city tax paid and GeoTAX city tax computed

    ix. Total difference of taxes paid to GeoTAX-based taxes that should have been paid

  c. Management combined the foregoing data with policyholder, county and city level data to determine the actual dollar amount that each policyholder and taxing authority was overcharged or undercharged.

12. The parties are now using this data to support the proposed settlement. Management is also using this data to correct the Company's local government premium tax filings with numerous taxing authorities in the Commonwealth;

13. On May 14, 2007, the KOI commenced a comprehensive market conduct examination of the Company for the period from January 1, 2005 through March 31, 2007, which included an examination of its local government premium tax allocation, collection, and remittance practices and procedures and the methodology it used to produce the data discussed above. On January 4, 2008, the KOI presented the Company with a Consent Order which contained no findings related to a violation of KRS 91A.080 and 806 KAR 2:905;

14. Based upon the foregoing, it is the Company's position that its current local government premium tax allocation, collection, and remittance practices and

procedures now comply with Kentucky law and the data being used to support the proposed class settlement is reasonably accurate and fair.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Michael Overmyer

Sworn to before me and subscribed in my presence this 14th day of January 2008.

KRISTEN E. KOLLAR
Notary Public, State of Ohio
My Commission Expires 11-24-08

_____
Notary